Argued April 23, 1895; decided June 15, 1896.

## WILLIS v. MARKS.

[45 Pac. 293.]

1. APPEAL — DEMURRER IS AN ANSWER — CODE, § 536. — Under section 536, Hill's Code, made applicable by section 902 to county courts, providing that any party to a judgment other than one given by confession, or for want of an answer, may appeal therefrom, an appeal lies from a county court judgment entered on demurrer, for a demurrer is an "answer" under that section: *Kearns* v. *Follansby*, 15 Or. 596, approved and followed.

2. REPLEVIN FOR VERIFIED CLAIM AGAINST AN ESTATE. — A verified claim against a decedent's estate, presented by the assignee thereof to the administrator for allowance, may be recovered by a replevin action on refusal of the administrator to surrender it after he has had a reasonable oportunity to examine it.

3. DECEDENT'S ESTATES — PRESENTATION OF CLAIM. — To "present" a claim against an estate, as required by section 1131, Hill's Code, means to display or proffer the claim, properly verified, and to leave it with the executor or administrator a reasonable length of time to enable him to determine its validity.

From Douglas: J. C. FULLERTON, Judge.

This is an action brought by W. R. Willis against Asher Marks, in the County Court of Douglas County, to recover the possession of a certain paper on which is written the particulars of a claim against the estate of S. Marks and Company, described in the complaint, which, omitting formal parts, is as follows: "That on the eighth day of January, eighteen hundred and ninety-four, at Rose-

burg, Douglas County, Oregon, the plaintiff was the owner and in possession of, and was then and ever since has been entitled to the immediate and exclusive possession of, the following described personal property, of the value of four hundred and seventy-seven dollars and fifty cents, to wit, a verified claim against the estate of S. Marks and Company of which the following is a copy:—

"Roseburg, Oregon, January 5, 1894.

"*Estate of S. Marks and Company to ·S. B. Hendricks:*

Dr.

"August 18, 1890.— To commission on sale of real estate as follows: Donation land claim of William Huston; also west half of southeast quarter of section seventeen; north half of northeast quarter, north half of northwest quarter of section twenty, township twenty-eight south, range five west; also northwest quarter of northwest quarter, section twenty-one, township twenty-eight south, range five west, to James Monroe for_____$ 9,400 00

"Commission, 4 per cent. of $4,900_____$   376 00

"Interest on $376 from August 18, 1890, to January 5, 1893, at 8 per cent. ____    101 50

                            $    477 50"

Then follows the verification. The complaint proceeds: "That the defendant claimed to be the administrator of the partnership property of Marks

and Company; that on the said eighth day of January, eighteen hundred and ninety-four, the plaintiff presented said verified claim to the defendant for examination, and his approval or rejection; that defendant took said claim from the possession of the plaintiff and wrongfully detains the same from the possession of the plaintiff; that before the commencement of this action, to wit, on the ninth day of April, eighteen hundred and ninety-four, at the city of Roseburg, Oregon, and at several other times, the plaintiff demanded of the defendant the possession of said verified claim; that the defendant still unlawfully withholds and detains said claim from the possession of the plaintiff, to his damage in the sum of four hundred and seventy-seven dollars and fifty cents." The prayer is for the ordinary judgment in such cases. A general demurrer to this complaint having been overruled by the court, and defendant failing to plead further, judgment was entered for plaintiff. From this judgment an appeal was taken to the circuit court, and being there reversed, and the action dismissed, the plaintiff appeals to this court. The plaintiff filed a motion in the circuit court to dismiss the appeal from the county court, assigning as grounds therefor that the judgment was given for want of an answer, and therefore not appealable.    REVERSED.

For appellant there was a brief and an oral argument by *Mr. William R. Willis, in pro. per.*

For respondent there was a brief and an oral argument by *Mr. J. W. Hamilton.*

Opinion by MR. JUSTICE WOLVERTON.

1. The first contention of plaintiff is that the judgment entered in the county court was given for want of an answer, and that from such a judgment no appeal lies. This contention is based upon the statute, (section 536, Hill's Code,) providing that "any party to a judgment or decree other than a judgment or decree given by confession, or for want of an answer may appeal therefrom." By section 902, Hill's Code, the provisions of title IV of chapter IV, relating to appeals, are made to apply to judgments and decrees of the county court in all cases, except decisions given or made in the transaction of county business. Thus it will be seen that appeals from the county to the circuit court are taken in the same manner and with like effect as appeals from the circuit to the supreme court. STRAHAN, J., in *Kearns* v. *Follansby*, 15 Or. 596, (16 Pac. 478,) said: "It is the constant practice, and has been since the adoption of the Code, to appeal to this court from the ruling of the lower court on a demurrer. And it has never been suggested here that such a judgment was given for want of an answer," thus in effect holding that a demurrer is an answer within the meaning of the Justice's Code, (section 2117, Hill's Code,) which contains substantially the same provision as section 536. A demurrer is an answer, in so far as it questions the law of the case upon the facts stated. An answer challenges the facts themselves, and, within the purview of the statute, the demurrer is as effective in giving

the right of appeal as an answer. So that the judgment of the county court was one from which an appeal was properly taken.

2. The second contention is that the claim which is the subject of the action is personal property, and that, as between the claimant and the administrator, the former has the right of possession. The claim was verified by the original claimant, and assigned to plaintiff prior to its being presented to the administrator for approval or rejection. In this form it is certainly such evidence of indebtedness as would lend to it the character of property, and we think is the subject of an action in replevin. It may be inferred from the complaint, although not directly alleged, that the defendant is, and was at the commencement of the action, administrator of S. Marks and Company, and this much was admitted at the argument; and it is directly alleged that the claim was presented to him for his examination and approval or rejection. It was in his hands more than three months before its return was demanded, and more than five months before the commencement of this action; certainly a sufficient length of time for him to have passed upon it, and placed thereon his indorsement as required by law. Whether or not, under these conditions, the law holds it to have been approved or rejected, it is believed the statutory provisions contemplate that the right of possession shall be the same in either case. The question turns upon

29 OR.—34.

what is meant, under the statute, by the presentation of a claim to an administrator or executor.

The following provisions of Hill's Code embrace all that seems to have any bearing on the subject: Section 1131. "Every executor or administrator shall, immediately after his appointment, publish a notice thereof for four successive weeks and oftener if the court or judge shall so direct. Such notice shall require all persons having claims against the estate to present them with the proper vouchers within six months to the executor or administrator." Section 1132. "A claim not presented within six months is not barred, but it cannot be paid until the claims presented within that period have been satisfied; and if the claim be not then due, or if it be contingent, it shall nevertheless be presented as any other claim." Section 1133. "Every claim presented to the executor or administrator shall be verified by the affidavit of the claimant, or some one on his behalf, who has personal knowledge of the facts, to the effect that the amount claimed is justly due, that no payments have been made thereon, except as stated, and that there is no just counterclaim to the same to the knowledge of the affiant. When it appears or is alleged that there is any written evidence of such claim, the same may be demanded by the executor or administrator, or that its nonproduction be accounted for." Section 1134. "When the claim is presented to the executor or administrator as prescribed in the last section, if he shall be satisfied that the claim thus presented is just, he shall indorse upon it the words 'Examined and Approved,'

with the date thereof, and sign the same officially, and shall pay such claim in due course of administration; but if he shall not be so satisfied, he shall indorse thereon the words 'Examined and Rejected,' with the date thereof, and sign his name officially. Every executor or administrator shall keep a list of all demands legally exhibited against the estate of the testator or intestate, and shall, every three months, file with the county court a statement of all such claims as have been presented, and whether the same have been allowed or rejected by him. If any executor or administrator shall refuse to allow any claim or demand against the deceased after the same may have been exhibited to him in accordance with the provisions of this act, said claimant may present his claim to the county court for allowance, giving the executor or administrator ten days' notice of such application." Section 1136. "A claim established by judgment or decree against the deceased in his lifetime need not be verified by affidavit, but it is sufficient to present a certified copy of the judgment docket thereof to the executor or administrator for allowance or rejection, as in other cases." Section 1170. "An executor or administrator shall within six months from the date of the notice of appointment, and every six months thereafter, render an account verified by his own oath, and file the same with the clerk, showing the amount of money received and expended by him, from whom received and to whom paid, with the proper voucher for such payments, the amount of the claims presented against the estate, and allowed

or disallowed, and the names of the claimants of each." Section 1172. "At the first term of the court after the filing of the first semiannual account and each semiannual account thereafter, the court shall ascertain and determine if the estate be sufficient to satisfy the claims presented and allowed within the first six months or any succeeding period of six months thereafter; but if the estate be insufficient for that purpose it shall ascertain what per centum of such claims it is sufficient to satisfy, and order and direct accordingly." Section 1173. "When the estate is fully settled it shall be the duty of the executor or administrator to file his final account, verified by his own oath, which shall contain a detailed statement of the amount of money received and expended by him, from whom received and to whom paid, and refer to the vouchers for such payments." Section 1174. "An heir, creditor, or other person interested in the estate may, on or before the time designated for hearing, file objections thereto, or to any particular item, specifying the particulars of such objection." Section 1175. "Upon the hearing the court shall give a decree allowing or disallowing the final account in whole or in part, as may be just and right." Section 1190. "When, upon the filing of a semiannual account, an order is made determining and prescribing the amount of assets applicable to the claims then presented, as provided in section 1172, thereafter the executor or administrator is personally liable to each creditor included in such order for such amount."

3. To these several sections of the statute we must look for the ascertainment of the proper method of presenting claims against the estate of a deceased person to an executor or administrator, and the possessory rights fixed by the act of presentment as touching the claims themselves. The word "present," in its ordinary signification, is well understood, and the same may be said of the word "exhibit." They and their derivatives appear to have been used by the statute as synonymous. The statutes of many of the states have defined explicitly what shall constitute the presentment or exhibition of a claim to the executor or administrator, or to the county or surrogate court. Under such statutes there can be no contention. But where the words or terms used have no technical meaning, and are not specially defined by statute, they must be given their ordinary signification, unless it is manifest from the different provisions construed *in pari materia* that they were used by the lawgiver in some other sense. This can only be ascertained by a consideration of the objects and purposes for which the statute was enacted. The claimant is required to present his claim with the proper "voucher": Code, § 1131. The voucher referred to is undoubtedly the affidavit of the claimant to the effect that the amount claimed is justly due, etc. So that the claim and the voucher go together, or rather, the voucher must go with the claim, in order to constitute a valid presentation of the same. This much is clear. If it should appear that there is written evidence of the claim, the administrator may de-

mand this, or require its nonproduction to be accounted for; and it is also clear that he has no right to retain such evidence of the claim beyond such reasonable time as will admit of its due inspection. If satisfied that the claim is just, he must indorse upon it the words "Examined and Approved," with the date thereof and sign it officially. When thus indorsed, it constitutes a demand which he must pay in the course of administration. If not satisfied, he must indorse it "Examined and Rejected," with date and official signature affixed. It is not claimed that the administrator must approve or reject the claim instanter, upon presentation; and it must be conceded that he has a reasonable time within which to determine as to whether it is just or not, and that during this time he is entitled to the possession thereof. Frequent accountings are required of him, to be submitted for the approval of the court. At any of these accountings the court may order a distribution of the funds on hand to be made among the creditors whose claims have been presented and approved, and the entry of such order *per se* fixes a personal liability upon the administrator in favor of the claimant, in the amount required to be so distributed to him. Further than this, when funds of the estate are disbursed the administrator is required to accompany his report of such disbursements with proper vouchers. For the ordinary expenses incurred in the settlement of the estate a receipt from the party to whom the money is paid showing for what the payment was made would undoubtedly constitute a proper voucher, but

the receipt alone could not be said to be a sufficient voucher for money paid out on a claim arising out of transactions with the party whose estate is being settled, as the court may not approve the payment upon the receipt alone, while it could and would ordinarily if accompanied by the verified claim. So that it would seem that the verified claim and receipt showing the payment, whether in whole or in part, would together constitute a proper voucher in such a case.

Again, the administrator is not required to pay any such claims without a previous order of the court, (*Rostel* v. *Morat*, 19 Or. p. 185, 23 Pac. 900,) and the court is undoubtedly entitled to an examination of the verification accompanying the claims, so that it may justify its order directing such payment to be made; so that, without the right to retain possession, it will be directly seen the administrator may, in many instances, be put to great inconvenience in producing these vouchers for the inspection of the court. The apparent purposes in requiring the presentation of claims accompanied with proper vouchers are: *First*, to furnish the administrator with pertinent evidence touching their validity and justness, by means of which he may determine for himself whether they ought to be paid out of the funds of the estate; and, *second*, to enable him to justify his acts, in some measure at least, in accounting with the county court. These conditions and purposes, considered in connection with the fact that the administrator is an officer of the court, the proper discharge of whose

statutory functions depends somewhat upon his
ability to furnish the court with vouchers justi-
fying his official acts, present strong and cogent
reasons for believing that the legislative will com-
prehended an absolute delivery of such claims
with a final surrender of the right of the posses-
sion to the administrator. Upon the other hand,
the statutory provisions requiring the administra-
tor to "keep a list of all demands legally exhib-
ited against the estate of the testator or intestate",
and to "file with the county court a statement
of all such claims as have been presented, and
whether the same have been allowed or rejected,"
without any express direction as to what disposition
shall be made of the claims themselves, taken in
connection with the provisions made in the same
section for a presentation of a rejected claim by
the claimant to the county court for allowance, and
elsewhere made, entitling him to sue the admin-
istrator upon such claim, would seem to indicate
a legislative intention that the claimant should, in
due course, be entitled to the possession of the
claim. So that no clear, special statutory signifi-
cation is manifest touching the disposition of such
approved or rejected claims by the administrator;
and, such being the case, there would appear to
be no reason for attaching to the terms "present"
or "exhibit" other than their ordinary signification.
This simply means a display or a profert of the
claim, accompanied with a proper voucher, and a
reasonable opportunity to the administrator to ex-
amine into and determine for himself upon the just-

ness and validity of the demand.  Beyond this the claimant is entitled to the possession of the claim. These considerations make it incumbent upon us to reverse the judgment of the court below, and it is so ordered.  The cause will be remanded for such further action as may seem pertinent, not inconsistent with this opinion.          REVERSED.

---

Decided at PENDLETON, July 18, 1896.