Decided 27 June, 1904.

## GOLTRA v. PENLAND.*

[77 Pac. 129.]

### AGENCY—ADMISSIONS OUTSIDE SCOPE OF AUTHORITY.

1. The statements of an agent, to be binding upon the principal, must have been made on a subject within the scope of the agent's authority, and at a time when that subject was being considered: for instance, in an action for conversion of sheep by one caring for them on shares, declarations of a person who delivered wool for defendant to a warehouseman as to the ownership of the sheep from which the wool was clipped were outside the scope of such person's authority as agent, and were inadmissible, he being employed simply to haul the wool to the warehouse.

### WITNESSES—CROSS-EXAMINATION.

2. Where, in an action against an executrix, her attorney, on direct examination, testified for plaintiff as to the presentation of the claim for allowance, it was not proper cross-examination to elicit testimony as to a conversation between said attorney and the decedent in which decedent had denied being indebted to plaintiff, as B. & C. Comp. § 849, permits cross-examination only as to any matter stated in direct examination or connected therewith.

### PRESENTING CLAIM TO EXECUTOR—EFFECT OF FAILURE TO ACT ON CLAIM.

3. Under B. & C. Comp. § 388, providing that no action shall be commenced against an executor until the claim has been presented and disallowed, and that if the executor does not pass on such claim within a reasonable time it will be deemed disallowed, the failure to act is equivalent to a rejection, and an instruction that a refusal to act amounts to a rejection is erroneous, there being a difference between failing to act and refusing to do so.

### PRESENTING CLAIM TO EXECUTOR—DETERMINATION OF REASONABLE TIME.

4. The determination of what is a reasonable time to pass upon a claim presented against an estate is a question for the court where the time of presentation is admitted and no explanation is given for the delay.

### WHAT IS A REASONABLE TIME TO PASS ON A CLAIM AGAINST AN ESTATE.

5. In the absence of some explanation, six months is a reasonable time for an executor to act on a claim presented against an estate, and the court should so declare.

### EVIDENCE OF PRESENTATION OF CLAIM—STATUTES.

6. Section 1161, B. & C. Comp., providing that no claim which shall have been rejected by the executor or administrator shall be allowed, except upon some competent or satisfactory evidence other than the testimony of the claimant, applies only to the trial on the merits of a rejected claim, and not to the preliminary question as to whether there was due presentation and disallowance within a reasonable time.

*NOTE.— For the opinion on a previous appeal see 42 Or. 18.          REPORTER.

EVIDENCE TO SUPPORT REJECTED CLAIM AGAINST AN ESTATE—STATUTES.

7. Section 1161, B. & C. Comp., prohibiting the allowance of a rejected claim against an estate "except upon some competent or satisfactory evidence other than the testimony of the claimant," does not mean that the other evidence aside from the testimony of the claimant must of itself be sufficient, but only that there must be other material and pertinent testimony supporting that given by claimant, sufficient to go to the jury, and on which it might find a verdict.

CONVERSION—FACTS TO BE PROVED.

8. In an action for conversion of a share of a band of sheep, plaintiff claiming that defendant had had a number of sheep belonging to him, caring for them on shares, and that a settlement was had, determining the number of sheep belonging to plaintiff, and the lease extended for another year, during which time defendant converted the sheep, it was incumbent on plaintiff to prove either that at the time of settlement the testator had sheep belonging to plaintiff, or, if he had none, that others were selected and identified in some way in lieu of them.

From Morrow: WILLIAM R. ELLIS, Judge.

Action by W. H. Goltra, executor of the estate of Hugh Fields, deceased, against Jane Penland, executrix of the estate of William Penland, deceased. This action was commenced September 28, 1901, by Hugh Fields against the executrix of the estate of William Penland, deceased, to recover the value of certain sheep alleged to have been converted by Penland to his own use. The complaint alleges, in substance, that for several years prior to June 1, 1900, Penland had in his possession a band of ewe sheep, the property of Fields, which he had been keeping on the shares; that, on or about the day named, he and Fields had an accounting and settlement as to such sheep, and it was ascertained and agreed between them that Penland then had in his possession 2,888 head of ewes and 821 lambs belonging to Fields, which he was to keep on shares for another year, and then return them to Fields, together with his share of the wool and increase; that, in pursuance of such agreement, Penland retained possession of the sheep until November, 1900, when, without the knowledge or consent of Fields, he wrongfully and unlawfully sold and disposed of them, and appropriated the proceeds to his own use, to the plaintiff's damage in the sum of $10,306; that Penland died in February, 1901, and defendant was duly appointed executrix

of his estate; that on April 18, 1901, Fields duly presented to her his claim for the value of the sheep so converted by her testator, but she has refused to pass upon the same, and has, therefore, in law, rejected it. Fields died in November, 1901, and the plaintiff, having been appointed his executor, was duly substituted in his place. Thereafter the defendant answered, denying the material allegations of the complaint, except the death of Penland and her appointment as executrix, and affirmatively alleging that on or about the 1st of April, 1901, the plaintiff pretended to present to her an alleged claim against the estate of her decedent, and that she has retained the same for investigation, but has neither allowed nor rejected it. For a further and separate defense, it is alleged that in 1897 Penland had in his possession about 800 sheep belonging to Fields, which at the latter's request he sold, and that he accounted to him for the proceeds in full. The cause was tried before a jury, resulting in a verdict and judgment for the defendant, and the plaintiff appeals.

REVERSED.

For appellant there was a brief over the names of *Chas. E. Redfield* and *Hewitt & Sox*, with an oral argument by *Mr. Henry H. Hewitt.*

For respondent there was a brief over the names of *G. W. Phelps* and *Huntington & Wilson*, with an oral argument by *Mr. Phelps* and *Mr. Hollis S. Wilson.*

MR. JUSTICE BEAN, after stating the facts in the above terms, delivered the opinion of the court.

1. Phil Cohn, a warehouseman, testified that in the years 1899 and 1900 one Lassen delivered wool at his warehouse for the account of Penland, which Penland afterwards said belonged to Fields. The witness was thereupon asked to relate any conversation he had with Lassen at the time the wool was delivered in 1900 about its coming from

Fields' sheep, counsel stating that he expected to prove by the witness that Lassen said it was Fields' share of the wool clipped from the sheep belonging to him, which Penland was running on the shares. An objection to the evidence was sustained, and, we think, properly. There was no testimony that Lassen was the agent of Penland for any purpose, unless it is to be inferred from the fact that he delivered the wool at the warehouse, and that would not be sufficient to make his declarations as to the title or ownership of the wool competent evidence against Penland: *Zorn* v. *Livesley*, 44 Or. 501 (75 Pac. 1057). Where the act of an agent will bind his principal, his declarations in respect to the subject-matter, if made at the time and forming a part of the transaction, are competent against the principal; but, if the declarations are concerning a matter not within the scope of the agent's authority, the principal is not affected by them in any way, even though they may be made at a time when the agent is lawfully transacting some business for him: *North Pac. Lum. Co.* v. *Willamette Mill Co.* 29 Or. 219 (44 Pac. 286); *First Nat. Bank* v. *Linn County Bank*, 30 Or. 296 (47 Pac. 614); *Wicktorwitz* v. *Farmers' Ins. Co.* 31 Or. 569 (51 Pac. 75); *Van Vechten* v. *Smith*, 59 Iowa, 173 (13 N. W. 96); 1 Greenleaf, Evidence (14 ed.) § 114. Lassen, if he was an agent of Penland at all, had no authority to deal with the wool in any way except to deliver it at the warehouse, and any statements or declarations he may have made as to the title or ownership were entirely outside the scope of his authority, and did not explain or characterize any act he was authorized to perform by virtue of his employment.

2. G. W. Phelps, one of the attorneys for the defendant executrix, was called by the plaintiff for the purpose of proving due presentation of the claim sued upon. On his

45 OR.——17

examination in chief, he testified that a certain identified claim was presented to him by Fields about the time it was made out, but no questions were asked him concerning any conversations he had with Fields at the time, nor did he testify on that subject. On cross-examination, however, he was allowed to testify that at the time the claim was presented he told Fields that Penland said he did not have any sheep belonging to him, and also: " I told Mr. Fields, among other things, that Mr. Penland, about the time that this Penland Livestock & Land Company, a corporation [was formed] — that, when the question came up as to turning over all the property to this new corporation, I asked him whether or not he had any sheep belonging to Mr. Fields, and Penland at that time said 'No,' and made some such remark as that 'The old fool is crazy. I don't owe him a cent.'" This was not proper cross-examination, and, the evidence itself being incompetent and obviously injurious to the plaintiff, the motion to strike it out should have been sustained. The right to cross-examine a witness is a valuable one, and should not be unnecessarily restricted, yet it must be limited to matter stated by the witness on his direct examination, or be connected therewith. A witness cannot upon cross-examination be questioned with regard to that which does not tend to impeach, rebut, explain, modify, or in some way qualify anything he has testified to on his examination in chief. He can only be examined on other matters by the examining party making him his own witness. The statute provides: "The adverse party may cross-examine the witness as to any matter stated in his direct examination, or connected therewith": B. & C. Comp. § 849. "Under this statute," says this court in *Ah Doon* v. *Smith*, 25 Or. 89, 93 (34 Pac. 1093, 1094), "and the rule there provided, a party has no right to cross-examine a witness except as to facts and circumstances stated on his

direct examination, or connected therewith; but, within
this limitation, great latitude should be allowed in con-
ducting the examination. It should not be limited to the
exact facts stated on the direct examination, but may ex-
tend to other matters which tend to limit, explain, or
qualify them, or to rebut or modify any inference result-
ing therefrom, provided they are directly connected with
the matter stated in the direct examination." See, also,
to the same effect, *Sayres* v. *Allen*, 25 Or. 211 (35 Pac.
254); *Williams* v. *Culver*, 39 Or. 341 (64 Pac. 763); Ra-
palje, Witnesses, § 246. Now, the only fact in this regard
testified to by Phelps on his direct examination was that
a certain verified claim of Fields against Penland's es-
tate had been presented to the executrix, through him, for
allowance. The plaintiff did not ask for any conversation
between the witness and Fields, nor did he offer to show
any declaration of either of the parties. He simply sought
to prove by the witness that the claim had in fact been
presented. The evidence elicited on cross-examination as
to what the witness told Fields at the time about Pen-
land's statements concerning the subject-matter of the
claim was in no way connected with the proof of its pre-
sentation; nor did it tend to limit, qualify, rebut, or ex-
plain in any manner the direct examination. It was
therefore not proper cross-examination, and, as the evi-
dence was otherwise incompetent, and obviously injurious
to the plaintiff, it cannot be said that the error was harm-
less.

3. The court instructed the jury:

"In order to recover in an action of this sort against
the executrix of the last will and testament of a deceased
person, the plaintiff must allege and prove, among other
things, that he presented his claim for the demand sued
upon, and that the same was rejected, before action was
commenced; but the refusal of the executrix to act upon

such claim, if you find from the evidence she did so refuse, after having the same in her possession for a reasonable time, and did neither approve or reject the same, nor take action thereon, such action on her part would amount to a rejection of the claim."

Objection was made to this instruction because "it failed to state what a reasonable time is, and is not a correct statement of the law applicable to the case." The instruction, we think, is erroneous for two reasons: It made the question of the rejection of the claim depend upon the refusal of the executrix to act upon it, when a mere failure or neglect to do so would have been sufficient; and it left the determination of what was a reasonable time after the presentation of the claim in which to allow or reject it as a question of fact for the jury. The statute provides that no action shall be commenced against an executor or administrator until the claim of the plaintiff has been presented and disallowed (B. & C. Comp. § 388), but if the administrator neither allows nor rejects the claim within a reasonable time after its presentation, it will be deemed disallowed, and the creditor may bring an action thereon: 2 Woerner, Administration, (2 ed.), § 390; 1 Abbott, Probate Law, § 473. The executor or administrator has a reasonable time after the presentation of a claim against the estate of his decedent in which to examine it and determine whether he will allow or reject it, but, if he fails to do either within such time, the claim will, in law, be disallowed, and it is immaterial whether his failure to act is due to an affirmative refusal or not. For this reason the language of the instruction was at least technically inaccurate, and may have misled the jury.

4. The more serious objection to the instruction, however, is that it left the question whether the defendant had a reasonable time after the presentation of the claim in which to allow or reject it as one of fact for the jury.

The complaint alleges that the claim was presented to the executrix for allowance on the 18th of April, 1901, and the answer says that it was presented on or about the first of that month. The action was commenced September 28th following, so that it is admitted by the record that it was almost six months from the time of the presentation of the claim to the commencement of the action; and, as there was no reason offered by the defendant for her delay in not passing upon the claim, the question as to whether she had had a reasonable time in which to do so was for the court, and not for the jury. "Generally, what is a reasonable time," says Mr. Justice STRAHAN, in *Fleischner* v. *Kubli*, 20 Or. 328 (25 Pac. 1086), "when the facts are undisputed, is a question of law for the court." The same rule is stated by Mr. Justice WOLVERTON in *Howell* v. *Johnson*, 38 Or. 571 (64 Pac. 659).

5. It is undisputed that the claim was presented to the executrix by the 1st of April, and was in her possession six months later, when the action was commenced. This was clearly a reasonable length of time in which to determine whether she would allow or reject it. The court should have so declared as a matter of law, and not left the question for the jury. In *Willis* v. *Marks*, 29 Or. 493 (45 Pac. 293), a claim against an estate was presented to the administrator on the 8th of January, a demand for its return made by the claimant on the 9th of the following April, and an action of replevin commenced about two months thereafter; and the court held that the administrator was entitled to hold the claim a reasonable length of time after its presentation for examination, to determine whether it should be allowed or rejected, but that a reasonable time had elapsed, and plaintiff could therefore maintain an action of replevin to recover possession thereof.

6. The deposition of Hugh Fields was taken prior to his

death, and read on the trial. He testified, among other things, that the last of April or the first of May, 1901, he presented to Mr. Phelps, the attorney for the executrix, for allowance, a verified claim sued upon, and that he subsequently endeavored to get the executrix to pass upon it, but could not do so. The court instructed the jury that they "must not find for the plaintiff upon any point, except there is competent or satisfactory testimony other than the deposition of the claimant, Hugh Fields, and this is true even though you should believe the testimony of Fields upon said point." The questions as to whether the claim sued upon had been presented to the executrix and rejected by her, or had been retained an unreasonable length of time, were submitted to the jury ; and, under this instruction, they were, in effect, told that they could not find in favor of the plaintiff upon such issues, except upon some evidence other than that of Fields, even though they should believe his testimony. This we conceive to be an erroneous construction of section 1161 of the statute, which provides that, when a claim has been presented to an executor or administrator, he shall indorse thereon the words " Examined and approved," with the date thereof, and sign the same officially, if he is satisfied that the claim is just; if not, he shall indorse thereon the words " Examined and rejected," with the date thereof, and sign the same officially, and that " no claim which shall have been rejected by the executor or administrator, as aforesaid, shall be allowed by any court, referee, or jury, except upon some competent or satisfactory evidence other than the testimony of the claimant." The purpose of this statute is apparent. It is to protect the estates of deceased persons against false and fraudulent claims, and to guard against false testimony. The death of a contracting party often renders it difficult, if not impossible, for his representative to show the invalidity of a claim against his

estate, or to defend against it; and therefore the statute
has provided that, when the lips of one party are closed
by death, the testimony of the survivor shall not be suffi-
cient alone to establish a claim against the estate of the
deceased. Before an action can be brought against an
executor to establish a liability against the estate, however,
it must be shown that the claim has been duly presented
to him and disallowed, or that he has retained it an un-
reasonable length of time, and the statute referred to can
have no application to a trial of this preliminary ques-
tion. It is only on the trial of the merits of a rejected claim
that it can apply. The issue as to whether the claim has
been presented and rejected is not within the purpose of
the statute, or the mischief intended to be remedied. It
is an issue to be determined from the testimony of living
witnesses, to be tried out as any other question of fact,
and decided upon the preponderance of the evidence.
When it comes to the trial of the merits, the statute ap-
plies. It must be first shown, however, that the claim
has been presented to the executrix and rejected by her,
and this can be done by any evidence satisfactory to the
trier of fact. The statute says that no claim which has
been rejected, etc., shall be allowed, except upon a certain
character of proof, but it says nothing about the proof
necessary to establish the preliminary issue of the pre-
sentation and rejection of the claim.

7. The meaning of the statute when it applies is not
easy to determine. It provides that a claim which has
been disallowed by an executor shall not be allowed by any
court or jury, except upon some "competent or satisfac-
tory" evidence other than the testimony of the claimant.
Whether this means that the claim shall not be allowed
unless the testimony of the claimant is corroborated by
other pertinent and competent testimony, or whether his
evidence shall be entirely disregarded and the claim dis-

allowed unless there is other evidence in the case suffi-
cient to satisfy the trier of fact of the justness of the claim,
is the important question.　The language of the statute is
contradictory.　It says the evidence shall be competent or
satisfactory, and these terms are not, in law, synonymous.
By "competent evidence" is meant that which the nature
of the fact to be proved requires — such as the production
of a writing when its contents are the subject of inquiry:
1 Greenleaf, Evidence, (14 ed.) § 2.　Satisfactory evidence,
on the other hand, is that evidence which ordinarily pro-
duces moral certainty or conviction in an unprejudiced
mind (B. & C. Comp. § 688), or, as Mr. Greenleaf says,
such as "ordinarily satisfies an unprejudiced mind be-
yond reasonable doubt": 1 Greenleaf, Evidence, (14 ed.)
§ 2.　Evidence may therefore be competent, and not sat-
isfactory.　And it may be satisfactory to the trier of fact,
and not be competent — such as secondary evidence of
the contents of a writing, without the writing itself being
accounted for.　The statute, therefore, cannot mean that
evidence other than that of the claimant, either competent
or satisfactory, will be sufficient to establish the claim.
Competent evidence would be such merely as the nature
of the case requires, and might be very slight and insuffi-
cient, while satisfactory evidence would require proof to
a moral certainty, if not beyond a reasonable doubt, and
that is more than the law requires in a civil case.　The
statute, therefore, must be construed according to its
spirit and purpose, and the evil sought to be remedied,
rather than the technical meaning of the words used.
Looking at it from this standpoint, and keeping in full
recognition its purpose, which is to avoid the injustice
which might follow from the allowance of a claim against
the estate of a deceased person on the testimony of the
claimant alone, the reasonable interpretation seems to be
that the testimony of the claimant is not sufficient, but

there must be other material and pertinent testimony supporting or corroborating that given by him, sufficient to go to the jury and upon which it might find a verdict, so that the decision may rest upon some evidence other than that of the claimant. This is substantially the construction of the statute indicated in *Quinn* v. *Gross*, 24 Or. 147, 151 (33 Pac. 535), and *Harding* v. *Grim*, 25 Or. 506 (36 Pac. 634), although in neither of these cases was the direct question presented. It was evidently not intended by the legislature that the evidence of the claimant should be entirely ignored or disregarded. If such had been the purpose, it would have been so provided. In many of the states, when one of the contracting parties to a litigated obligation is dead, the other is not permitted to testify : 1 Wharton, Evidence, (2 ed.) § 466 ; 2 Woerner, Administration, (2 ed.) § 398; Bradner, Evidence, § 14. Our statute, however, does not go to that extent. The claimant in an action against an estate is a competent witness in his own behalf (B. & C. Comp. § 722), but his testimony is not of itself sufficient to establish his claim. Section 1161 is practically an enactment of the English equity rule, which is that "a pecuniary demand against the estate of a deceased person will not be considered and established by the oath of the person making such claim, unsupported by any other evidence": Wharton, Evidence, (2 ed.) § 467.

8. The remaining assignments of error are based upon instructions given. It is unnecessary to set out the instructions in full, or to notice them in detail, for they are lengthy and would unnecessarily encumber this opinion, and many of the questions involved have already been disposed of. The only point remaining to be noticed is the instruction to the effect that plaintiff could not recover in this action unless Penland, at the time of the alleged settlement between himself and Fields in May,

1900, had in his possession sheep belonging to Fields, or unless certain sheep were then set aside and appropriated to the contract, so that they could be identified, and Penland thereafter converted them to his own use. In other words, that if Penland had, prior to the alleged settlement, sold and disposed of all the sheep previously leased to him by Fields, and converted the proceeds to his own use, the plaintiff could not recover, even if he had concealed that fact from Fields, and Fields had, in ignorance thereof, made the alleged settlement and agreement of leasing in May, 1900. The theory of the plaintiff's case is that Fields was the owner of a band of sheep which Penland had been running and caring for along with sheep of his own for a number of years prior to May, 1900; that Fields had not seen the sheep for some time, and did not know the number he owned; that about that time he and Penland had a mutual accounting and settlement as to the number of sheep in Penland's possession belonging to Fields, and Penland agreed to lease them for another year on shares, at the expiration of which time he was to return the sheep to Fields, less a certain per cent for loss, with his share of the increase and wool; that, in violation of such agreement, and before the expiration of the lease, he sold and disposed of the sheep, and appropriated the proceeds to his own use. The action is for the conversion of the sheep alleged to have occurred before the expiration of the lease. It was necessary, therefore, for the plaintiff to prove that Penland had in his possession at the time of the settlement in May sheep belonging to Fields, and that he had converted them to his own use. The settlement and agreement, if made as alleged, would be conclusive as to the number of sheep; but, if Penland had no sheep at the time belonging to Fields, the agreement would not transfer the ownership of other sheep to him, unless they were selected and identified in some way.

It would probably estop Penland and his representatives, in an action for a breach of contract of leasing, or for a failure to return the sheep at the expiration of the time, to deny that he had the number of sheep agreed upon, but this is not an action of that character.

It follows that the judgment must be reversed and a new trial ordered.　　　　　　　　REVERSED.

---

Decided 5 July, 1904.