Argued March 18, affirmed March 25, 1924.

## JOHN UHLER *v.* J. J. HARBAUGH, ADMR., DORA M. CLOW, BESSIE K. KOENEMAN AND EDWIN C. CARNAL.

(224 Pac. 89.)

**Executors and Administrators—Evidence Held Insufficient to Go to Jury in Support of Claim for Services.**

1. In an action against an administrator for services performed in caring for decedent's widow under an oral contract entered into before his death, *held,* that there was not sufficient evidence to go to the jury in support of plaintiff's claim, in view of Section 1241, Or. L.

**Executors and Administrators—Evidence to Sustain Verdict on Claim Against Estate.**

2. Under Section 1241, Or. L., a claimant against the estate of a decedent, having laid a foundation for his recovery by producing evidence upon which the jury may find a verdict in his favor, may buttress and reinforce his case by his own evidence so as to render it more probable that the jury will so find, and evidence of claimant against the estate is therefore not valueless.

**Executors and Administrators—Statute as to Proof of Claim Against Estate not Repealed by Constitution.**

3. Section 1241, Or. L., providing that no claim shall be allowed against the estate of a decedent except upon some competent or satisfactory evidence other than the testimony of the claimant, was not repealed by virtue of Constitution, Article VII, subdivision

---

See 24 C. J., pp. 403, 405, 873.

3-c, providing that no fact tried by a jury shall be otherwise
re-examined by any court unless the court can affirmatively say
there is no evidence to support the verdict.

From Lane: G. F. SKIPWORTH, Judge.

Department 1.

This is an action brought by plaintiff against J. J.
Harbaugh, as administrator with the will annexed of
the estate of C. H. Kentner, deceased, as defendant,
in which Dora M. Clow, Bessie K. Koeneman and
Edwin C. Carnal, heirs of C. H. Kentner, deceased,
intervene.

The complaint set forth: That C. H. Kentner died
in Iowa about November 11, 1905, owning certain real
property in Lane County, Oregon. That thereafter,
on June 11, 1921, Harbaugh was appointed by the
County Court of Lane County as administrator with
the will annexed of the estate of Kentner. That
shortly prior to the death of Kentner plaintiff and
Kentner entered into an agreement whereby it was
mutually agreed and promised by Kentner that if
plaintiff would promise to stay with, care for and
nurse Jennie Kentner, the aged wife of Kentner,
plaintiff would be paid therefor out of Kentner's es-
tate. That plaintiff accepted such employment and
in consideration of said promise by C. H. Kentner
plaintiff mutually promised and agreed so to stay
with, care for and nurse the said wife of Kentner,
and shortly after the death of said C. H. Kentner
plaintiff and said Jennie Kentner removed to Oregon
and took up their residence upon the land of said
Kentner in Lane County, where said parties resided
until the death of said Jennie Kentner, on or about
December 27, 1920. That under and pursuant to said
agreement and promise, and in fulfillment thereof, and
in reliance upon the promise of C. H. Kentner, plain-

tiff did, on and between said dates, live with, care for and nurse said Jennie Kentner, and in that behalf assisted her in removing to Oregon; purchased what she desired and needed from time to time; assisted in erecting and improving buildings upon said land; cared for her livestock; did all chores upon the premises; cultivated and cropped the same each year; did most of the housework and cooking; prepared most of the meals, and performed numerous other things and duties in and about the premises and home, and waited upon and cared for Jennie Kentner at all times during said period and nursed her through all illnesses, including her last illness; and did in all respects and in good faith fully and wholly carry out and perform the agreement upon his part. That the reasonable value of said services is and was the sum of $150 per year, and that there is reasonably due and owing plaintiff for such services during said time the sum of $2,269.16, no part whereof has been paid. Then followed an allegation that plaintiff had duly presented his claim to the administrator and that it had been rejected.

The material allegations of the complaint were denied by the interveners and the case went to trial, whereupon the jury returned a verdict in favor of the plaintiff in the sum of $1,200. A motion for a new trial, upon various grounds, was filed and was allowed by the court upon the ground that there was not evidence in the case sufficient to go to the jury corroborating the testimony of the plaintiff, as provided by Section 1241, Or. L.; from which order granting a new trial plaintiff has appealed.

The testimony upon which plaintiff relied was his own testimony, which is as follows:

"Q. Did you have a talk with Mr. Kentner before he died, with reference to his wife—taking care of her?

"A. Mr. Kentner told me that—

"Q. Tell the jury just what he said to you about that—what Mr. Kentner said.

"A. Mr. Kentner told me, before he died, about two months, I would get something.

"Q. What for?

"A. For looking after her.

"Q. Did he ask you whether or not you would look after his wife after he died?

"Objected to as leading. Objection sustained.

"Q. What, if anything, did Mr. Kentner tell you or ask you about looking after his wife?

"A. He told me to look after her as long as she lived, and I would get something.

"Q. What, if anything, did you say to that?

"A. I told him, 'I will.' "

Frank Stewart's deposition, read in behalf of plaintiff, was, in part, as follows:

"Did you ever have any conversation with C. H. Kentner in reference to Uhler's working for or staying with Kentner, or his wife, or both? If so, state when they were, where they were, who was present, and what the conversations were as nearly as you can recall, being careful to state each conversation as if you were repeating exactly what Kentner stated in his own language, and not merely your interpretation of the conversation, and use the first person instead of the third person.

"Answer: Kentner stated to me, 'I want John [meaning Uhler] to stay and care for my wife and myself as long as we live.'

"Question: State any conversation, if any you had, with C. H. Kentner, concerning Uhler's staying with or caring for Jennie Kentner, wife of C. H. Kentner, after Kentner's death, giving time, place, persons present, as nearly as you can recall, and observing the caution given in Interrogatory No. 11.

"Answer: During the last year of his life at Whitten, Iowa, Mr. Kentner was planning on moving to Oregon and during this time he stated: 'I want John

to go with Jennie and myself and care for us the rest of our lives.'

"Question: If C. H. Kentner ever gave you, or if you ever heard him give any other person any reason or purpose in buying his land in Lane County, Oregon, state what was said, when, where, and with whom, observing the caution given in Interrogatory No. 11.

"Answer: 'I bought this land for a home for Jennie because it is located near her daughters.'

"Question: Give any further information you have, if any, concerning the matter of John Uhler accompanying Jennie Kentner, widow of C. H. Kentner, to Oregon.

"Answer: John Uhler accompanied Jennie Kentner to Oregon for the purpose of caring for the farm, livestock, and also Mrs. Kentner."

It was further shown: That the plaintiff and the wife of the deceased remained in Iowa for about a year after the death of Kentner, when Kentner's wife, Jennie Kentner, removed to the land owned by the deceased in Lane County, in which, by will, she was granted a life estate, with reversion to Kentner's heirs. That she was accompanied by the plaintiff, who lived upon the land with her and took care of her until she died in December, 1920. That he did most of the housework, labored diligently in assisting to earn money for her support, and performed all the duties that an affectionate friend would have performed under the same circumstances. That he had lived with Kentner and his wife for several years before he came to Oregon and was paid by Kentner at the rate of $10 per month for his services. This was practically the effect of all the testimony produced on behalf of plaintiff.          AFFIRMED.

For appellant there was a brief and oral argument by *Mr. Fred E. Smith.*

For respondent Harbaugh there was a brief and oral argument by *Mr. H. E. Slattery.*

For respondents Clow, Koeneman and Carnal there was a brief over the name of *Messrs. Potter, Foster & Immel,* with an oral argument by *Mr. E. O. Potter.*

McBRIDE, C. J.—1. Conceding, without deciding, that a man can make an oral contract for services to be performed after his death which shall bind his estate independently, as in this instance, for a period of nearly twenty years, we are of the opinion that there was not sufficient evidence to go to the jury in support of this claim.

Section 1241, Or. L., among other things, provides as follows:

"* * No claim which shall have been rejected by the executor or administrator, as aforesaid, shall be allowed by any court, referee, or jury, except upon some competent or satisfactory evidence other than the testimony of the claimant."

This statute has been construed by this court several times in the cases to which we now call attention. In *Harding* v. *Grim,* 25 Or. 506, 508 (36 Pac. 634), Mr. Justice BEAN, commenting upon the above-quoted section of our statute, said:

"At the trial the plaintiff was nonsuited, on motion of the defendant, because he had not proven a cause sufficient to be submitted to the jury, by evidence other than his own, as required by Section 1134, Hill's Code. This section, among other things, provides, 'that no claim which shall have been rejected by the executor or administrator * * shall be allowed by any court, referee, or jury, except upon some competent or satisfactory evidence other than the testimony of the claimant.' The effect of this statute is

that, while the claimant is a competent witness in an action against an executor or administrator upon a claim or demand against the estate of the deceased, he cannot prevail in the action unless he proves his case by some competent or satisfactory evidence other than the testimony of himself. His testimony may be used, perhaps, to corroborate other evidence in the case, but it is not sufficient, in itself, to establish his claim. There must be evidence tending to support the action, independent of his testimony, sufficient to go to the jury, and upon which the jury or other trier of the fact would be authorized to find in his favor. As a consequence, it was incumbent on the plaintiff in this case to furnish some competent evidence tending to support his claim, other than his own testimony; and unless he did so, the nonsuit was properly granted."

Later, in *Goltra* v. *Penland,* 45 Or. 254, 264 (77 Pac. 129, 133), the same justice used the following language:

" * * The statute, therefore, must be construed according to its spirit and purpose, and the evil sought to be remedied, rather than the technical meaning of the words used. Looking at it from this standpoint, and keeping in full recognition its purpose, which is to avoid the injustice which might follow from the allowance of a claim against the estate of a deceased person on the testimony of the claimant alone, the reasonable interpretation seems to be that the testimony of the claimant is not sufficient, but there must be other material and pertinent testimony or corroborating that given by him, sufficient to go to the jury and upon which it might find a verdict, so that the decision may rest upon some evidence other than that of the claimant. This is substantially the construction of the statute indicated in *Quinn* v. *Gross,* 24 Or. 147, 151 (33 Pac. 535), and *Harding* v. *Grim,* 25 Or. 506 (36 Pac. 634), although in neither of these cases was the direct question presented. * * "

And, in *Re Estate of Banzer,* 106 Or. 654, 657 (213 Pac. 406, 408), Mr. Justice BURNETT, speaking for the court and commenting upon the two opinions above cited, used this language:

"The clear import of these precedents is that the claimant in such cases must make out a *prima facie* case, sufficient to sustain a verdict in his behalf, independent of his own testimony; or, putting it extravagantly, he must make out such a *prima facie* case before he is entitled to open his mouth as a witness. Unless that situation is made to appear independent of his own declarations as a witness as an essential of his contention, he cannot fortify it by his own testimony for it is not present to be fortified."

2. In view of these decisions let us assume that no testimony had been adduced except that of Stewart above quoted and the fact that he accompanied Mrs. Kentner to Oregon and performed the services shown in the testimony adduced by plaintiff. Would the jury be justified in finding that these services were performed in pursuance of an executory, oral contract whereby Mr. Kentner assumed to bind his estate for their payment? Would it, independently, be any evidence of such a contract? Assuredly not. And yet, under the authority of the decisions above quoted, unless a verdict upon such evidence could have been upheld, the testimony of the plaintiff was of no value. It does not follow, where other evidence sufficient to justify a verdict is introduced, that the testimony of the plaintiff is valueless. "Evidence sufficient to justify a verdict" is one thing, and that which may in effect produce a verdict is another. Having laid a foundation for his recovery by producing evidence upon the strength of which a jury *may* find a verdict in his favor, the claimant may then buttress and reinforce his case by his own evidence so as to render it

more probable that a jury *will* so find. It should be remembered that at common law, and in many of the states by statute, a claimant against the estate of a deceased person is not permitted to testify. In view of the fact that the lips of an alleged promisor are sealed by death, and of the frequent attempts of unscrupulous persons to palm off fictitious claims under such circumstances, lawmakers have been and courts should be zealous to protect estates from the consequences of such attempts, and hence the rule adopted by our statute as construed in our opinions above cited.

3. It was earnestly and ingeniously argued by the able counsel for plaintiff that Section 1241, Or. L., is repealed by virtue of subdivision 3–c of Article VII of our present Constitution, which provides, among other matters, that " * * no fact tried by a jury shall be otherwise re-examined in any court of this state unless the court can affirmatively say there is no evidence to support the verdict. * * " We are of the opinion that the sole intent of this provision was to prevent judges from deciding upon the weight of evidence otherwise legally sufficient, and was not intended to interfere with the right of the legislature to prescribe the *quantum* of evidence necessary to establish some particular fact. The construction given it by counsel would compel the court to uphold a verdict in a prosecution for perjury rendered upon the unsupported testimony of one witness, or of any other crime upon the uncorroborated testimony of an accomplice, and to permit usage or treason to be established on like testimony. Such was evidently not the intent of the framers of the Constitution: *Consor* v. *Andrew,* 61 Or. 483 (123 Pac. 46).

Counsel has frankly stated that the testimony adduced was all that he was able to obtain as to the existence of the contract, and this being so, we deem it unnecessary to consider the other points raised in the briefs of counsel. The order of the Circuit Court is affirmed.    AFFIRMED.

BEAN, RAND and COSHOW, JJ., concur.