Argued January 16, affirmed March 19, 1929.

D. M. FIELD *v.* BLANCHE A. RODGERS, Ad-
MINISTRATRIX.

(275 Pac. 598.)

For appellant there was a brief and oral arguments by *Mr. Walter C. Winslow* and *Mr. Guy O. Smith.*

For respondent there was a brief over the name of *Messrs. McNary, Keyes & Page,* with oral arguments by *Mr. Gale S. Hill* and *Mr. Walter Keyes.*

BEAN, J.—Plaintiff contends that Rodgers failed to finance the plan in accordance with the agreement, and it was modified and in consideration of plaintiff advancing most of the funds for the enterprise, each of the parties should receive one half of the profits. The agreement between plaintiff and Rodgers was oral.

Plaintiff asserts that it was contemplated that if the wrecking of the Astoria hulls was successful financially, other contracts should be sought and shared in one third to plaintiff and two thirds to decedent. The wrecking of the two hulls at Astoria was a financial success, yielding a profit, as figured, of $11,574.96. The money was collected by decedent. The wrecking was completed about September 25, 1919. Decedent soon after went to Washington, D. C., for the twofold purpose, to get other contracts for wrecking hulls, and to obtain a settlement with the Emergency Fleet Corporation pertaining to the canceled contract for shipbuilding of the corporation. Rodgers, now deceased, remained in Washington, D. C., or in the east, much of the time for two or three years, making several trips back and forth.

The record tends to show that on December 22, 1919, Rodgers, deceased, entered into a contract with the Emergency Fleet Corporation for the wrecking of thirty-four other hulls at divers places in the United States. This contract was modified several times, and is the basis of the main part of this controversy. The trial court held that plaintiff was not entitled to an accounting.

Plaintiff claims that decedent returned immediately after procuring the contract, and told plaintiff about having obtained the same and arranged for plaintiff to stay in Astoria and look after the affairs of the corporation while he, decedent, would look after carrying out the wrecking contracts in the east. The defendant contends that plaintiff Field had nothing whatever to do with the contracts for wrecking the thirty-four hulls.

In September, 1924, Rodgers met his death in an aeroplane accident at the Oregon State Fair at Salem, Oregon. Plaintiff also asserts a claim to one half of the profits of the proceeds for wrecking the two Astoria hulls instead of one third.

About the last of December, 1919, plaintiff and decedent adjusted the matter of the wrecking of the two Astoria hulls and plaintiff figured up the expenses and receipts from parts sold, and amounts put in by each of them, making the net profits $11,574.96 and a settlement was made. One third of the amount was figured as Field's share and some small item of $19.45, added making $3,877.77, the figures being in evidence as Defendant's Exhibit 4. On January 2, 1920, Rodgers gave plaintiff a check for the latter amount. Plaintiff in his testimony says that Rodgers then said he must keep the balance "until we can get further advanced with this deal."

After a time Rodgers obtained a settlement with the Emergency Fleet Corporation for George F. Rodgers Company pertaining to the shipbuilding contracts and received in settlement, as we understand, $330,000. Afterward he, Rodgers, offered plaintiff $2,000 for his stock in the corporation, provided plaintiff would turn over all papers in his possession, "pertaining to George F. Rodgers Company and pertaining to the shipwrecking contracts." Plaintiff states, in substance, that he accepted this settlement, as the decedent stated that he was broke, but stated to Rodgers at the time, that if he afterward found out he was not broke, he would enforce his rights. When the inventory of George F. Rodgers Estate was filed and showed an appraisement of about $83,000, plaintiff was dissatisfied with the division

made with decedent and presented his claim to the administratrix of the estate.

1. The allegations of plaintiff in his complaint as to his interest in the contracts for wrecking the thirty-four hulls in the east, and his interest of one half, instead of one third, in the wrecking contracts of the two Astoria hulls, are not satisfactorily substantiated by proof. We therefore concur in the finding of the trial court in that regard.

2. A claimant in an action against an administrator, upon a claim or demand against the estate of the deceased, cannot prevail unless he proves his case by some competent or satisfactory evidence other than the testimony of himself. His testimony may be used in addition to the other corroborative evidence, if such other evidence is of sufficient strength to support a verdict or decree. Or otherwise expressed, having laid a foundation for a recovery by producing evidence upon the strength of which a court may render a decree, or a jury a verdict, in favor of claimant, the claimant may then buttress and re-enforce his case by his own evidence so as to produce a preponderance of evidence: *Uhler* v. *Harbaugh, Admr.*, 110 Or. 609, 616 (224 Pac. 89).

Secton 1241, Or. L., provides, "that no claim which shall have been rejected by the executor or administrator, as aforesaid, shall be allowed by any court, referee, or jury, except upon some competent or satisfactory evidence other than the testimony of the claimant." See, also, *Branch* v. *Lambert,* 103 Or. 423, 434 (205 Pac. 995); *Goltra* v. *Penland,* 45 Or. 264 (77 Pac. 129); *Harding* v. *Grim,* 25 Or. 506, 508 (36 Pac. 634); *Quinn* v. *Gross,* 24 Or. 150 (33 Pac. 535); *Consor* v. ˜*Andrew,* 61 Or. 483, 490 (123 Pac.

46). The obvious purpose of the statute is to provide for cases where death often renders it difficult, if not impossible, for the representative to show the invalidity of a claim against the estate, or to defend against it, therefore the statute has provided that when the lips of one party are closed by death, the testimony of the survivor shall not be sufficient to alone establish a claim against the estate of the deceased: *Goltra* v. *Penland, supra.*

This suit is not for the purpose of setting aside the settlement in regard to the George F. Rodgers Company business, which includes the adjustment with the Emergency Fleet Corporation, but it pertains exclusively to the contracts of wrecking thirty-four hulls in different parts of the east, and the claim for a balance for the two Astoria hulls.

Whatever might be our conclusion in regard to the weight of the evidence, taken as a whole, we do not think there is sufficient corroboration of the plaintiff's testimony to support his claim.

The judgment of the Circuit Court is therefore affirmed. AFFIRMED.

COSHOW, C. J., and BROWN and BELT, JJ., concur.