Argued February 18; affirmed July 8; rehearing denied
August 1, 1932

# MOUNT ET AL. *v.* RIECHERS

(13 P. (2d) 335)

*O. B. Mount,* of Baker (F. W. Smith, of Salem, on the brief), for appellants.

*Geo. P. Winslow,* of Tillamook, for respondent.

BROWN, J. The plaintiffs tried this case upon the theory of a stated account. The defendant proceeded upon the theory of reasonable value.

Among the instructions requested by plaintiffs is the following:

"From the pleadings and evidence in this case, your verdict must be for the plaintiffs in the sum of $1,500."

This instruction was refused, and plaintiffs assign such refusal as error, on the ground that "the stated account was admitted."

The plaintiffs' evidence is to the effect that, when David Martiny was discharged from their hospital as cured he asked for his bill and was informed by Dr. Hugh S. Mount that the charge was $2,000; that he paid $500 on the account and stated that he had a lot of timber holdings and some real property that he did not like to sacrifice at that time, and he asked for a year's time in which to pay the balance, which was granted.

When plaintiffs had concluded their case Dr. Ringo, called as a witness for the defendant, after expressing his opinion as to the reasonable charge for an operation for the removal of the prostate gland, testified that, in December following the operation, Martiny came into his office a couple of times for the purpose of having the dressing changed, and "I asked him what they charged him.   *   *   *   He said $2,000, and I asked him if he paid it. He said he paid $500. I said: 'Are you going to pay the rest of it?' He said: 'I don't think I will.' "

The plaintiffs assert in their brief:

"Here was a stated account, and the five hundred dollar payment was a ratification of it."

In the early case of *Crawford v. Hutchinson,* 38 Or. 578 (65 P. 84), this court held that, when an account rendered has been assented to, the question of liability becomes one of law for the court, and not one of fact for the jury. From Point 3 of the Syllabus of that case, we take the following:

"Where the testimony showing a right of action in plaintiff and against defendant is undisputed and

no counter-claim or set-off is pleaded, the trial judge may properly instruct the jury to return a verdict for the plaintiff."

■ It is generally held than an account stated is final and unimpeachable excepting for fraud, accident, or mistake. *Griffith v. Hicks,* 150 Ark. 197 (233 S. W. 1086, 18 A. L. R. 882).

But the difficulty that confronts the court in this cause lies in the fact that the defendant denies that the account has been stated or agreed to.

The record shows that this claim was filed with the executor of the estate, who rejected the same, and that action was thereupon instituted.

It is the law of this state "that no claim which shall have been rejected by the executor or administrator * * * shall be allowed by any court, referee, or jury, except upon some competent satisfactory evidence other than the testimony of the claimant." Oregon Code 1930, § 11-504.

See *Franklin v. Northrup,* 107 Or. 537 (215 P. 494).

The defendant offered testimony that, at the time of the alleged agreement constituting the stated account, Martiny had on deposit with the Bank of Tillamook the sum of $3,500. He also adduced testimony in effect that the charge for the services rendered by the plaintiffs was excessive, and we have referred to testimony to the effect that, within a short time after the alleged agreement to pay $2,000 for the services rendered him, Martiny said, in substance, that he did not think he would pay any more on the account. So far as the record discloses, however, he at no time denied his promise to Dr. Hugh S. Mount.

■ The plaintiffs contend that the court erred in admitting any evidence of the reasonable value of the

services rendered by Doctors Mount. The purpose of the testimony to which this objection is directed is stated by the court in the following instruction:

"Evidence of the character of and of the value of the medical services rendered by plaintiffs to Martiny has been admitted in evidence, both in behalf of the plaintiffs and in behalf of the defendant, but this testimony was admitted only for the purpose of affecting the probability as to whether or not a settlement of the character alleged in the complaint was or was not entered into, and such testimony should be considered by you for that purpose, and also for the additional purpose of establishing that there existed at the time some foundation in the form of service rendered upon which to base a settlement as to the amount to be paid by Martiny."

In support of this instruction, see 2 Jones' Commentaries on Evidence (2d Ed.), pp. 1115, 1116, §§ 603, 604.

■ The plaintiffs assert that, if testimony of reasonable value of services was admissible at all, it was error to permit the Tillamook doctors called by defendant to testify as to what the specific charge in the case should have been. We cannot agree with plaintiffs. Each of the doctors called qualified himself as a competent witness before he was permitted to testify.

■■ The fourth assignment relates to defendant's objection to the following question asked Dr. Rockey by plaintiffs on direct examination, which objection was sustained by the court:

"Now, Doctor, assuming the facts in this case may be that a man by the name of David Martiny of Tillamook, Oregon, came to Doctors Mount for medical treatment and operation for prostate gland, and that he was received by them for this service on or about September 19, 1926, and he underwent a preliminary examination or preliminary service for upbuilding

and making him fit for the operation from September 19, 1926, to October 6, 1926, being a period of about seventeen days, and that at the expiration of the seventeen days he was thought physically fit to undergo the operation and he was operated upon for this ailment, prostate gland; his blood chemistry was taken on September 22d, October 2d, October 4th and November 4th of 1926, and on October 14, 1926, the tissue examination, pathological, was made, the operation was made on October 6, 1926, and he had medical treatment from that date up until November 23, 1926, when he was discharged as cured. You may assume, if you think that the rule prevails generally in Oregon City and Portland, that the charge is based somewhat upon the financial ability of the patient to pay, that David Martiny was supposed to be worth at that time approximately two hundred thousand dollars, but, in reality, he was actually worth from fifty thousand to two hundred thousand, what would you think would be a reasonable price for this service, and you may consider further that he was a bachelor, if that has anything to do with it?''

The answer excluded reads:

''To answer the last portion of the question first, that would have something definitely to do with it. If I were to make out the bill, it were made out from our office, the number of dependents would be definitely taken in consideration. It always is, in every bill that we render. I would feel that a bill of two or three thousand dollars would probably be very reasonable, and I am taking into consideration in my answer the fact of the service over that long a period of time, the care of and preparation of the patient, and the successful operation, and the after care. I feel the bill within those limits would be reasonable.''

There is no testimony that David Martiny was worth $200,000, or that he was a bachelor. His wife died but a few months prior to the date of the operation, and the record shows that he had a living step-

daughter. Doctor Giesy did testify, however, that shortly after the time of Martiny's operation, Martiny told him that he was worth from $100,000 to $150,000.

There are authorities to the effect that a doctor, in fixing his fees, will take into consideration the financial ability of his patient to pay. In the case of *Re. Levitan,* 143 La. 1025 (79 So. 829, 3 A. L. R. 1646), the court, speaking through Mr. Chief Justice Monroe, said:

"It is a matter of common information that physicians and surgeons do not regulate their charges by any fixed standard of pecuniary value, but, to a certain extent, base them on the ability of the patient to pay, and, on that basis, more frequently than otherwise, perhaps, are but poorly compensated."

In a note following the opinion from which the excerpt is taken, the annotator said:

"The rule in the majority of the jurisdictions which have passed on the question is that the affluence, financial ability, or pecuniary circumstances of a patient cannot be considered as a factor in determining the reasonableness of a physician's charge for professional services, and evidence to that effect in an action or proceeding is inadmissible" (citing authorities).

Following the citations, we find the following:

"In Swift v. Kelly (1910), Tex. Civ. App., 133 S. W. 901, an action to recover the value of medical services rendered to the defendant, the court held that evidence as to the defendant's wealth and ability to pay, as a factor controlling the reasonableness of the physician's fees, was inadmissible, the court saying:

'Certainly no court would hold that the value of ordinary labor could be determined by such a test, and upon principle we can see no distinction between such a claim and one of the character now under discussion.'

"Where the plaintiff, a physician, brought an action to recover on an implied contract the value of professional services rendered to the defendant's son, and in the course of the action offered to prove the affluence of the defendant as a factor in determining the professional fee, the court held that such evidence was inadmissible. * * * The court said: 'He is entitled to a verdict for the reasonable value of his services, although the defendant may be a poor man. He is not entitled to a verdict for more than the reasonable value of his services, although the defendant may be a man of great wealth.' Morrell v. Lawrence, 203 Mo. 363, 120 Am. St. Rep. 660, 101 S. W. 571, 11 Ann. Cas. 650."

The annotator set down the following "Minority Rule":

"In at least three jurisdictions it is well settled that the financial ability of a patient or his estate to pay is one of the elements to be considered in determining the reasonableness of a physician's charge for professional services rendered." (citing authorities)

A more recent case than any cited in the note just referred to is *Houda v. McDonald,* 159 Wash. 561 (294 P. 249). In this case, after thoroughly discussing the authorities, the court held that evidence of wealth and income of the patient and her husband was admissible in the action by the physician to recover for professional services. The testimony upon which the court based its judgment is fully set out in the opinion, and we shall not repeat it here. But a perusal thereof convinces this court that the Washington court properly stated:

"We are of the opinion that the rule best supported by reason, in any event as applicable to this case, is that in some substantial measure the reasonable compensation of the physician is determinable by the ability of the patient or her husband to pay for the serv-

ice, since the contract for the service was by the physician directly with the patient, for the service to be rendered to the patient, the services including a major operation, and it being shown by competent evidence that it was customary among physicians to charge for such service in some measure· according to the ability of the patient to pay for such service.''

■ The plaintiffs assert that the court erred in giving the following instructions:

''The defendant admits the rendition of medical and surgical services by the plaintiffs to David Martiny, but denies there was a settlement or that Martiny agreed to pay $2,000, and defendant says the services rendered were of the value of $500 and no more, and that Martiny paid that amount to the plaintiffs in satisfaction, and defendant denies there is anything due at the present time from the estate of David Martiny to the plaintiffs. The plaintiffs deny this new matter urged in the answer. The right of action asserted by the plaintiffs is upon an account stated or a settled account upon agreement of the parties to be entered, and recovery may be had by the plaintiffs upon such settlement only, and not upon some other theory or some other previous or prior contract. The complaint alleges—you will have the complaint with you when you retire for deliberation—you will have an opportunity to inspect it, and to avoid any confusion in your minds from the inspection of it the Court suggests to you that the complaint alleges the rendition of medical services and surgical services of the reasonable value of $2,000. It also alleges a settlement and agreement was made whereby Martiny bound himself to pay $2,000. While so alleging, there is only one contract upon which recovery may be had. The first, the reasonable value, is superseded by the second, the agreed value. These two contracts are not collateral. Neither one supplements the other, though the first is the consideration for the second. They are successive, and the latest, the settlement, supersedes the other, and, in effect, so far as this case is concerned,

abrogates the former, so you must understand that if there was no settlement, no agreement by Martiny as to the specific amount to be paid by him to the plaintiffs for the services rendered, plaintiffs cannot recover in this action.

"In order to constitute settlement it must be established by the evidence that the plaintiffs, or one of them, and David Martiny, expressly or impliedly agreed upon a balance due from Martiny to the plaintiffs, and, although you may believe from the evidence that, on November 26, 1926, or on some other date, plaintiffs, or one of them, and David Martiny met together and talked over the charges made by plaintiffs for medical services rendered by them to and for Martiny, the reasonableness or unreasonableness thereof, and what should or should not be paid, it would not be binding upon the plaintiffs nor upon Martiny as a settlement unless you further find from the evidence that both parties, both the plaintiffs and Martiny, then expressly or impliedly agreed and understood that said sum of $2,000 was the value of the services, and the balance, after the payment of $500, should be agreed as the amount due from Martiny to the plaintiffs; in other words, in order to make it binding and an effective settlement, the minds of the plaintiffs, or one of them acting for both, and the mind of David Martiny must have met and understood that the value of the medical services of $2,000—must have met and understood that Martiny should pay and plaintiffs should receive $2,000 for the medical services rendered by plaintiffs to Martiny. The results must have been mutually understood and agreed upon by them, they must have understood it alike, Martiny that he agreed to pay $2,000 and plaintiffs that they should receive $2,000. If the plaintiffs understood one thing, one amount, and Martiny understood another thing, or a different amount, there could be no meeting of the minds, and, in consequence, no contract of settlement. Both must have understood it alike, that it was agreed that the value of the medical services was $2,000, and that Martiny should pay that amount for the services

rendered. An account stated by an agreement, like any other agreement, cannot exist and be binding unless the minds of the parties to be bound have met. The parties must agree; the form of the assent is immaterial; it may be expressed, or it may be implied from the conduct of the parties and all of the surrounding circumstances, and their subsequent conduct in relation to it may be considered by you in determining whether there was a meeting of the minds.

"The law favors and approves settlement of obligations between creditors and their debtors, and presumes that they have consulted their own interests in making such settlement, and, when made and established by proper proof to have been made, the law sustains them as made. If you find from the evidence that such a settlement was made between the plaintiffs and Martiny it would bind Martiny, it would bind his estate, and thus bind the defendant as executor of his last will; so you will understand, gentlemen, that plaintiffs are here relying for recovery upon a contract of settlement, and this contract is one that supersedes the previous one for the reasonable value of medical services, for reasonable compensation. If plaintiffs recover, they must recover upon the contract of settlement alleged in the complaint or not at all. They cannot recover upon the theory that they have rendered valuable services. So you will understand, the question here is: Was there a settlement? If there was, what was the settlement? Was it the settlement alleged in the complaint? If it was, plaintiffs should be entitled to recover. If there was no settlement, there could be no recovery by plaintiffs.

"Evidence of the character of and of the value of the medical services rendered by plaintiffs to Martiny has been admitted in evidence, both in behalf of the plaintiffs and in behalf of the defendant, but this testimony was admitted only for the purpose of affecting the probability as to whether or not a settlement of the character alleged in the complaint was or was not entered into, and such testimony should be con-

sidered by you for that purpose, and also for the additional purpose of establishing that there existed at the time some foundation in the form of service rendered upon which to base a settlement as to the amount to be paid by Martiny."

This charge delivered to the jury by the able trial judge constitutes a correct exposition of the law applicable to the facts in the case at bar.

The plaintiffs contend that the statement made by the court in its instructions that "it, the statute, declares that where the lips of one party are closed by death," et cetera, is erroneous as not applicable to the issues of the case. We cannot follow counsel. We believe that this language is applicable, and, certainly, not error.

■ The plaintiffs assign error of the court in instructing the jury as follows:

"In the ultimate, you must be able to say that you are satisfied from the evidence, independent of the evidence of the plaintiffs, that the plaintiffs are entitled to recover in this action, and, in order that you may not go astray on this question, it is proper that the court shall suggest to you the purposes of this statute."

The instruction just quoted is in complete harmony with *Uhler v. Harbaugh*, 110 Or. 609 (224 P. 89). In that case this court, speaking through Mr. Chief Justice McBride, in the course of a discussion of statutes relating to claims against estates of decedents, quoted largely from *Harding v. Grim*, 25 Or. 506 (36 P. 634), and the later opinion of *Goltra v. Penland*, 45 Or. 254, (77 P. 129), and continued with the following declaration by Mr. Justice Burnett, speaking for the court in *Re Estate of Banzer*, 106 Or. 654 (213 P. 406):

"The clear import of these precedents is that the claimant in such cases must make out a prima facie

case, sufficient to sustain a verdict in his behalf, independent of his own testimony; or, putting it extravagantly, he must make out such a prima facie case before he is entitled to open his mouth as a witness. Unless that situation is made to appear independent of his own declarations as a witness as an essential of his contention, he cannot fortify it by his own testimony for it is not present to be fortified."

See, also, *Field v. Rodgers,* 128 Or. 661 (275 P. 598), and decisions therein cited.

We have considered the various assignments of error involved in this appeal, but find no sufficient reason for its reversal. We therefore direct the affirmance of the judgment appealed from.

BEAN, C. J., BELT and KELLY, JJ., concur.