# LAWRENCE, *Respondent,*
## *v.*
# LADD, *Appellant.*
## (TC 76-1607, SC 24705)
### 570 P2d 638

Michael R. Genna, Cottage Grove, argued the cause for appellant. With him on the briefs was Maynard Wilson, Cottage Grove.

Herb Lombard, of Sahlstrom & Lombard, Eugene, argued the cause and filed a brief for respondent.

Before Denecke, Chief Justice, and Tongue and Bryson, Justices, and Gillette, Justice Pro Tempore.

TONGUE, J.

## TONGUE, J.

This is an action against a decedent's estate by a woman who lived with him for 14 years without the benefit of matrimony. In her complaint she seeks recovery both for breach of an alleged oral agreement to make a will and also for breach of an implied contract to pay her for the reasonable value of her services. The case was tried to a jury, which returned a verdict in her favor in the sum of $36,190.12. Defendant appeals from the resulting judgment.

The controlling issue to be decided in this case is whether there was sufficient evidence to support the verdict of the jury "other than the testimony of the claimant," so as to satisfy the requirements of ORS 115.195, which provides as follows:

> "A claim that has been disallowed by the personal representative may not be allowed by any court except upon some competent, satisfactory evidence other than the testimony of the claimant."

We recognize, as contended by plaintiff, that in such a case, as an action at law, the sole function of this court is to determine whether there is any substantial evidence in the record to support the findings by the jury and that in doing so we must view the evidence in the light most favorable to the plaintiff.[1] Nevertheless, in such an action the question remains, by reason of ORS 115.195, whether plaintiff has sustained the burden to establish her claim by "some competent, satisfactory evidence other than the testimony of the claimant."[2]

*Summary of the evidence.*

(a) *Plaintiff's testimony.*

Plaintiff testified that she met the decedent, John Cline, in 1960 after her former husband had died in

---

[1] *See Cronn v. Fisher,* 245 Or 407, 416, 422 P2d 276 (1966); *Wagner v. Savage, as Adm'r,* 195 Or 128, 141, 244 P2d 161 (1952).

[2] *See In re Estate of T. A. Stoll,* 188 Or 682, 694-95, 214 P2d 345, 217 P2d 595 (1950).

1958, leaving her with two small children and some income from his Social Security and Veterans benefits. When she started "going with plaintiff" she was employed at a hotel and lived with her children in a house that she had rented. At that time he owned a logging truck and hauled logs for various lumber companies. He also then owned a car and a ranch.

In 1961 Mr. Cline moved into the house rented by the plaintiff. Beginning at that time plaintiff paid for the rent, groceries, clothing, dental and doctor bills with her own funds. She did not, however, pay any bills "related to what John was doing." After about two years he bought some property and a trailer house. They lived there for a time and then moved to another rented house.

Plaintiff testified that when Mr. Cline bought that property he wanted to put it in her name, but she "didn't want that" because of "Social Security." He also wanted to get married, but she didn't want to "on account of [her] income." During those years, however, her children lived with them and called him "Dad" and he would introduce her as "Mrs. Cline," although she "still maintained [her] name as Lawrence."

In about 1972 Mr. Cline became sick. He later learned that he had cancer and that he was going to die soon. According to plaintiff, they then had "a discussion" about the "giving of [his] property" to her and that he "wanted to get married because he wanted me to have everything." Plaintiff also testified that at or about that time he told her that he wanted to "leave my property to you"; that she "said then that [she] didn't want it," but that from then on there was "a growing understanding" that "he wanted [her] to have everything"; that he "told [her] that several times," and that "he wanted [her] to have it rather than his relatives."

Mr. Cline died on October 23, 1975. Plaintiff testified that when he "came from the doctor" the day

before he died they talked again about getting married; that they then made plans to go to Washington to get married and also talked about going to an attorney to make a will, but that he died before he could do so.

Plaintiff also testified that during the years that she lived with Mr. Cline from 1961 to 1975 she received a total of $67,741.57 in Social Security and Veterans benefits and used all of that money for "family purposes"; that the reasonable value of the services performed by her during that period for the "family" was $200 per month; that "during the time that [she] was with Mr. Cline * * * [she] had some expectation that [she] was going to be compensated"; that this was her "understanding and agreement with him"; and that she felt that she had "earned the money" claimed in her complaint in the sum of $36,190.

(b) *Testimony of other witnesses.*

One witness, Irving Hamilton, testified that in August 1976, about two months before decedent's death, he talked with Mr. Cline about buying "a piece of ground" across the road for his trailer house and that "he said 'No,' he wouldn't sell it because he wanted her to have the land instead of the money," and that "if something happened to him she'd have a place to live."

A second witness, William Adams, who had known Mr. Cline as a "log truck driver" testified that in a conversation with the decedent shortly before his death "he started to cry * * * and said that he was dying" and that Mr. Cline said, "[M]e and Max [the plaintiff] is going down in the morning to make a will out."

Plaintiff's two children testified that they referred to decedent as "Dad" and heard him refer to plaintiff as "Mrs. Cline"; that plaintiff received an income from Social Security and Veterans benefits from their deceased father; that they never received any of that

money and that "as far as [they] knew" it was used for family bills.

Plaintiff also offered documentary evidence of the amount of Social Security and Veterans benefits received by her, totaling $67,741.57. In addition, plaintiff offered in evidence the appraisal of decedent's estate in the sum of $36,190, including several motor vehicles and other items of personal property, a tract of real property (including a trailer house) appraised at $12,500, and a contract for the sale of another tract of real property appraised at $6,588.06.

*Plaintiff failed to sustain her claim against decedent's estate by "competent, satisfactory evidence other than that of the claimant."*

(a) *The alleged oral contract to make a will.*

Plaintiff contends that a contract to make a will "need not be executed with the formalities required for testamentary dispositions";[3] that such a contract may be enforced either at law or in equity, including an action for damages for its breach;[4] that plaintiff's claim under such a contract "is similar to any other contract claim and is proven by 'the usual course of evidence' ";[5] that the corroboration required by ORS 115.195 for claims against an estate by "some competent, satisfactory evidence other than the testimony of the claimant" may be provided by "any competent, satisfactory evidence to support the findings made by the triers of the fact,"[6] including the use of circumstantial evidence;[7] that the "high evidentiary standard" required in suits in equity for specific performance of such an agreement does not apply in an action

[3] Citing *Florey et al v. Meeker et al,* 194 Or 257, 277, 240 P2d 1177 (1952), and 1 Page on Wills § 10.1 (Bowe & Parker ed 1960).

[4] Citing *Wagner v. Savage, as Adm'r, supra,* n.1, among other authorities.

[5] Citing *Mason, Ehrman & Co. v. Lewis Estate,* 131 Or 242, 255, 276 P 281, 281 P 123, 282 P 772 (1929).

[6] Citing *Cronn v. Fisher, supra,* n.1; *Wagner v. Savage, as Adm'r, supra,* n.1; and *Richter v. Derby,* 135 Or 400, 406, 295 P 457 (1931).

[7] Citing *Seaton v. Security S. & T. Co.,* 131 Or 261, 268, 282 P 556 (1929).

at law for damages;[8] that evidence which "shows that the claimant performed according to the agreement, if believed, is sufficient to corroborate the existence of an express agreement";[9] and that testimony of the plaintiff as to the existence of the contract and testimony of another witness that she intended to perform is sufficient to satisfy the requirement for independent corroborating evidence for an action at law.[10]

Plaintiff calls attention to her testimony that four years before decedent's death, when he knew that he was ill, decedent stated that plaintiff was to have his property upon his death and that he wanted to leave his property to her; that on the day before he died decedent repeated that promise. Plaintiff then contends that "when corroborated this testimony is sufficient to support the existence of an express agreement if it is believed by the jury."

Finally, plaintiff contends that the corroboration required by ORS 115.195 was provided by the testimony of her son and daughter to the effect that plaintiff "performed her part of the agreement by supporting and caring for decedent in reliance that he would perform his part of the bargain and leave his property to her at his death" and that such an agreement was also corroborated by the testimony of Irving Hamilton of decedent's refusal to sell some of his property because "if something happened to him she'd [plaintiff] have a place to live" and "he'd rather she [plaintiff] had that than the money" and by the testimony of William Adams that shortly before decedent's death he said that "me and Max [the plaintiff] is going down in the morning to make a will out."

---

[8] Citing *Wagner v. Savage, as Adm'r, supra,* n.1; *Jacobson v. Holt,* 121 Or 462, 468, 255 P 901 (1927); and *Re Estate of Banzer,* 106 Or 654, 658, 213 P 406 (1923).

[9] Citing *Wagner v. Savage, as Adm'r, supra,* n.1, and *Jacobson v. Holt, supra,* n.8.

[10] Citing *Richter v. Derby, supra,* n.6.

After reviewing the cases and authorities cited by plaintiff, as well as other previous decisions by this court construing and applying the provision of what is now ORS 115.195, we conclude that plaintiff's contentions cannot be reconciled with the requirements of that statute, as construed in such cases.[11]

As early as in *Harding v. Grim,* 25 Or 506, 36 P 634 (1894), this court, in construing an earlier statute with identical language (Section 1134, Hill's Code) said (at 508):

> "* * * The effect of this statute is that, while the claimant is a competent witness in an action against an executor or administrator upon a claim or demand against the estate of the deceased, he cannot prevail in the action unless he proves his case by some competent or satisfactory evidence other than the testimony of himself. His testimony may be used, perhaps, to corroborate other evidence in the case, but it is not sufficient, in itself, to establish his claim. *There must be evidence tending to support the action, independent of his testimony, sufficient to go to the jury, and upon which the jury or other trier of fact would be authorized to find in his favor. * * *"* (Emphasis added)

---

[11] It is of interest to note that no reference was made by either party on trial or in briefs on this appeal to ORS 112.270(1), as adopted by the 1973 Oregon Legislature (Oregon Laws 1973, ch 506, § 13), which provides as follows:

"(1) A contract to make a will or devise, or not to revoke a will or devise, or to die intestate, executed after January 1, 1974, shall be established only by:

"(a) Provisions of a will stating material provisions of the contract;

"(b) An express reference in a will to a contract and extrinsic evidence proving the terms of the contract; or

"(c) A writing signed by the decedent evidencing the contract.
"* * * * *"

*See also Johnson v. Wilson,* 276 Or 69, 77, 554 P2d 157 (1976).

At the time of oral argument plaintiff contended that the statute does not apply to an oral contract to make wills made prior to the effective date of that statute in 1973. It may be doubted whether the alleged oral agreement in this case was made prior to that date, if at all. Because, however, no contention to the contrary is made by defendant, we do not consider the application of that statute to the facts of this case.

This strict rule was again approved in *Goltra v. Penland,* 45 Or 254, 77 P 129 (1904) (at 264-65), as follows:

"* * * The statute, therefore, must be construed according to its spirit and purpose, and the evil sought to be remedied, rather than the technical meaning of the words used. Looking at it from this standpoint, and keeping in full recognition its purpose, which is to avoid the injustice which might follow from the allowance of a claim against the estate of a deceased person on the testimony of the claimant alone, the reasonable interpretation seems to be that the testimony of the claimant is not sufficient, but *there must be other material and pertinent testimony supporting or corroborating that given by him, sufficient to go to the jury and upon which it might find a verdict,* so that the decision may rest upon some evidence other than that of the claimant. * * *" (Emphasis added)

Since then this same rule has been reaffirmed by this court in a long line of cases.[12] These cases include *Re Estate of Banzer,* 106 Or 654, 213 P 406 (1923), one of the cases relied upon by plaintiff, in which it was held (at 657-58) that:

"The clear import of these precedents is that the claimant in such cases must make out a *prima facie* case, sufficient to sustain a verdict in his behalf, independent of his own testimony; or, putting it extravagantly, he must make out such a *prima facie* case before he is entitled to open his mouth as a witness. Unless that situation is made to appear independent of his own

---

[12] *See e.g., Branch v. Lambert,* 103 Or 423, 434, 205 P 995 (1922); *Re Estate of Banzer, supra,* n.8; *Uhler v. Harbaugh et al,* 110 Or 609, 616, 224 P 89 (1924); *Franklin v. Northrup,* 107 Or 537, 553, 215 P 494 (1923); *Estate of McLain,* 126 Or 456, 463-64, 270 P 534 (1928); *Field v. Rogers,* 128 Or 661, 665, 275 P 598 (1929); *Seaton v. Security S. & T. Co., supra,* n.7; *Mount v. Riechers,* 140 Or 267, 280, 13 P2d 335 (1932); *In re Pottratz Estate,* 158 Or 625, 633, 77 P2d 436 (1938); *DeWitt v. Rissman,* 218 Or 549, 554-55, 346 P2d 104 (1959); *Hagberg v. Haas,* 237 Or 34, 37, 390 P2d 361 (1964).

*See also Bull v. Payne,* 47 Or 580, 583, 84 P 697 (1906); *In re Estate of T. A. Stoll, supra,* n.2 at 694-95; and *Cronn v. Fisher, supra,* n.1 at 424.

*Cf. In re Hattrem's Estate,* 170 Or 613, 135 P2d 777 (1943); *In re Johnson's Estate,* 178 Or 214, 164 P2d 886 (1945); and *Wagner v. Savage, as Adm'r, supra,* n.1.

declarations as a witness as an essential of his contention, he cannot fortify it by his own testimony for it is not present to be fortified."

To the same effect, *see also Field v. Rogers,* 128 Or 661, 665-66, 275 P 598 (1929), and *see In re Estate of T. A. Stoll,* 188 Or 682, 695, 214 P2d 345, 217 P2d 595 (1950), also cited by plaintiff.

Criticism of this rule was once recognized by this court in an opinion by Rossman, J., in *In re Hattrem's Estate,* 170 Or 613, 632, 135 P2d 777 (1943), as follows:

"The purpose of statutes like §19-704 is to withhold full effect from the testimony of a survivor when the other party to the transaction has been silenced by death. The fact that the rule arbitrarily yields that result has brought down upon it the criticism that 'it favors the dead above the living, for it would rather see an honest survivor unjustly lose his claim than an honest decedent be made unjustly to pay; yet the equities being equal, the living person should rather be favored.' Wigmore on Evidence, 3d ed., § 2065."

In a later opinion, however, in *DeWitt v. Rissman,* 218 Or 549, 346 P2d 104 (1959) (also by Rossman, J.), this court discussed (at 553-54) the similar statutory provisions as set forth in ORS 116.555 (since replaced by ORS 115.195) and in ORS 30.080 as enacted by the Oregon legislature in 1937, which provided that actions for personal injury shall not abate upon the death of the wrongdoer, but that the injured person "shall not recover judgment except upon some competent, satisfactory evidence other than the testimony of the injured person." This court (at 555) held as follows:

"ORS 30.080 was not enacted until 1937 (Oregon Laws 1937 chapter 32 Section 1). Its adoption came after the four decisions that we have mentioned [*Harding v. Grim,* 25 Or 506, 36 P 634 (1894); *Goltra v. Penland,* 45 Or 254, 77 P 129 (1904); *Re Estate of Banzer,* 106 Or 654, 658, 213 P 406 (1923); and *Field v. Rogers,* 128 Or 661, 275 P 598 (1929)] and others have been announced by this court. Accordingly, the legislature in writing our wrongful death act employed the language which it found in an act enacted 75 years previously [section

[ 190 ]

1134, Hill's Code] the meaning of which had been carefully elucidated by this court in language easily understandable.

"We believe that it is our duty to hold that when in 1937 the legislature used the phraseology of one of its early statutes which had been interpreted by this court many times it intended that its re-employment of the language should receive the same construction that this court had repeatedly placed upon the earlier enactment. We, therefore, conclude that the words 'some competent satisfactory evidence other than the testimony of the injured person' as found in ORS 30.080 has the meaning that was ascribed to the similar language of ORS 116.555 by the four decisions of which we have taken notice."

In 1969 the Oregon legislature repealed ORS 116.555 and enacted a new probate code, including ORS 115.195, which again adopted terms identical with the previous provisions of ORS 116.555 and Section 1134 of the original Hill's Code of 1862 in providing that such a claim against an estate must be established by "some competent, satisfactory evidence other than the testimony of the claimant."

As in *In re Hattrem's Estate, supra,* we believe that when in 1969 the Oregon legislature again enacted a statute which included these same terms as previously interpreted by this court many times, it again intended that these terms should receive the same construction that this court had repeatedly placed upon its "earlier enactments."

In *Hagberg v. Haas,* 237 Or 34, 390 P2d 361 (1964), this court again (at 37) recognized and reaffirmed the rule that in a claim against a decedent's estate, by reason of what is now ORS 115.195, "the plaintiff had the burden of establishing a prima facie case by evidence entirely apart from her own testimony." *See also Cronn v. Fisher,* 245 Or 407, 423-24, 422 P2d 276 (1966).

It follows that we must again hold that this plaintiff cannot prevail in this case in the absence of "some

competent, satisfactory evidence" other than her own testimony and sufficient to make out a prima facie case to go to the jury, "entirely apart from her own testimony."[13]

■ Upon the application of this rule to the testimony offered by the plaintiff in this case "other than" her own testimony, we believe that such testimony was not sufficient, in and of itself, to make a prima facie case sufficient to go to the jury and to support a finding by it that there was an oral agreement between plaintiff and the decedent to the effect that he would make a will leaving his entire estate to her.

Plaintiff's two children did not testify that they heard decedent make any statement to that effect or on that subject. Irving Hamilton testified only that decedent refused to sell "a piece of ground across the road from where [decedent's] trailer house is" and stated that "if something happened to him she'd have a place to live" and that "he'd rather she had that than the money." William Adams testified only that decedent told him that he was dying and that "me and Max is going down in the morning to make a will out."

---

[13] We do not believe that the cases cited by plaintiff require a holding to the contrary. Those cases hold that recovery was to be allowed against decedents' estates under the facts of such cases, some of which involved actions for breach of an implied contract to pay the reasonable value of services, rather than actions for breach of an express contract to make a will. *See Cronn v. Fisher, supra,* n.1 at 419-24; *Wagner v. Savage, as Adm'r, supra,* n.1 at 139-40; *In re Estate of T. A. Stoll, supra,* n.2 at 691-97; *Hiller v. Smith,* 171 Or 428, 437, 137 P2d 828 (1943); *Losey v. O'Hair,* 160 Or 63, 83 P2d 493 (1938); *Richter v. Derby, supra,* n.6 at 404-07; *Seaton v. Security S. & T. Co., supra,* n.7 at 270-71; *Mason, Ehrman & Co. v. Lewis Estate, supra,* n.5 at 260; and *Jacobson v. Holt, supra,* n.8 at 468.

As previously noted, plaintiff contends that "in an action at law the existence of evidence in addition to the testimony of the claimant which shows that the claimant performed according to the agreement, if believed, is sufficient to corroborate the existence of an express agreement," citing *Wagner v. Savage, as Adm'r, supra,* n.1, and *Jacobson v. Holt, supra,* n.8. Both cases involved actions to recover the reasonable value of services performed for a decedent, rather than actions for damages for breach of an express contract to make a will.

*See generally* Annot., 21 ALR2d 103 (1952), and Note, 42 Or L Rev 133 (1963).

Regardless of whether the testimony of these four witnesses "corroborated" plaintiff's testimony that decedent had agreed to make a will leaving her "everything," as contended by her, we do not believe that the testimony of these four witnesses, standing alone, was "substantial evidence" sufficient to make a prima facie case upon which the jury could properly find that there was an agreement to make a will leaving all of his property to her, including not only the tract of land with his trailer house, appraised at $12,500, but also the contract to sell another tract of land, appraised at $6,588, and his various motor vehicles and other items of personal property, appraised at $17,102.

(b) *The alleged implied agreement to pay the reasonable value of plaintiff's services.*

■ As previously stated, plaintiff also seeks recovery of damages for breach of an implied contract to pay her for the reasonable value of her services. Again, in order for plaintiff to recover under such a theory in an action against decedent's estate she must, by reason of the requirements of ORS 115.195, offer "competent, satisfactory evidence" sufficient to establish a prima facie case "entirely apart from her own testimony."[14] In addition, because of her relationship with the decedent, such evidence must be sufficient to overcome the presumption that her services were performed gratuitously by showing not only that plaintiff expected to be compensated for such services, but that decedent expected to pay for her services.

■ In *York v. Place,* 273 Or 947, 544 P2d 572 (1975), under facts somewhat similar to those of this case, this court held that a woman who lived for several years with a partially disabled logger to whom she was not married and who "cooked and did the housework," among other things, had such a relationship with that

---

[14] *Cf. Hagberg v. Haas,* 237 Or 34, 37, 390 P2d 361 (1964). *See also e.g., In re Estate of T. A. Stoll, supra,* n.2, and cases cited therein. *See generally Annot.,* 21 ALR2d 103 (1952).

decedent as to raise a presumption such as recognized in *Wilkes v. Cornelius,* 21 Or 341, 347, 23 P 473 (1890).

In *Wilkes* it was held (at 347) that:

"* * * The rule in such cases is that furnishing support and maintenance to a near relative will be presumed to have been done gratuitously, however valuable it may have been, and that *such presumption can only be overcome by showing that payment therefor was intended and expected to be made in some manner.* * * *" (Emphasis added)

As also noted in *York* (at 949), it was held by this court in *Franklin v. Northrup,* 107 Or 537, 550, 215 P 494 (1923), that this principle extends beyond relatives or spouses:

" 'But the implication of a promise to pay for such services does not arise where the parties are related by blood or marriage and are members of the same family and household, or where there existed between the parties a "domestic relationship the incidents of which are essentially similar to those which are ordinarily associated with such a relationship when it exists between kinsfolk." * * *.' "

This court held again in *York* (at 950-51) that in order to overcome such a presumption in such a case there must be evidence showing both that plaintiff expected payment for such services and also that the decedent expected to pay for such services, citing *In re Estate of T. A. Stoll,* 188 Or 682, 695-96, 214 P2d 345, 217 P2d 595 (1950).

In *York* there was testimony from witnesses other than the plaintiff "that the decedent had stated to other persons that at his death the farm would go to plaintiff." (273 Or at 949). This court held, however (at 951), that "[t]here was no evidence in this case that plaintiff expected payment or that the decedent expected to pay for her services" and that, as a result, "there was no evidence" to support a finding of fact by the trial court "that there was an implied agreement that decedent would pay plaintiff for her services."

[ 194 ]

Plaintiff contends that her testimony that she expected to be compensated for her services was corroborated by the testimony of her two children that she used her income to support the decedent throughout the period that they lived together. The evidence in this case "apart from [plaintiff's] own testimony" to the effect that she expected payment for her services was limited to documentary evidence of the amount of Social Security and Veterans benefits received by her and the testimony of her two children that they received none of such money, but that "as far as [they] know" that money was "used for family bills"; that their relationship with decedent was that of "father and son [and daughter]," and that they heard decedent refer to plaintiff as "Mrs. Cline." In our opinion, this evidence was insufficient, when considered "entirely apart from [her] own testimony" to show that plaintiff expected payment for her services. Indeed, there was no testimony by any witness other than that of the plaintiff, to show even the "general character of such services."[15]

Similarly, the only evidence other than plaintiff's testimony to show that decedent intended to pay for such services was the testimony of Irving Hamilton and William Adams. Plaintiff contends that such evidence was sufficient to corroborate plaintiff's testimony that decedent intended to compensate her. As previously stated, Mr. Hamilton testified that decedent declined to sell "a piece of ground" across the road from his trailer house "because he wanted her to have the land instead of the money" so that "if something happened to him she'd have a place to live." Mr. Adams testified that shortly before decedent died he said that "he was dying" and that "me and Max

---

[15] Plaintiff contends that "[i]t is sufficient corroboration that the witnesses knew the general character of the services and contributions," citing *In re Estate of T. A. Stoll, supra,* n.2 at 697, and *Hiller v. Smith,* 171 Or 428, 434, 137 P2d 828 (1943). In neither of those cases, however, was the relationship between the plaintiff and the decedent such as to raise the presumption that plaintiff's services were gratuitous, so as to require evidence sufficient to overcome that presumption.

[plaintiff] is going down in the morning to make a will out."

This evidence is no stronger than the testimony in *York* that "the decedent had stated to other persons that at his death the farm would go to plaintiff." The testimony of Mr. Hamilton and Mr. Adams also failed to "show that the recipient [the decedent] recognized his obligation * * * by stating to others that he expected to make full compensation therefor," as previously stated to be the requirement in such cases. *In re Estate of T. A. Stoll, supra,* at 695.

We believe that our decision in *York* is controlling on this issue and requires a holding that this testimony by Mr. Hamilton and Mr. Adams was insufficient to overcome the presumption that plaintiff's services were performed gratuitously by showing that "payment therefor was intended and expected to be made in some manner"[16] by "some competent, satisfactory evidence other than the testimony of the claimant," as required by ORS 115.195.

We recognize the serious nature of the problems arising when an unmarried woman has lived for a period of years with a man who has died without a will, during which time she may have contributed to his support and performed various services for him.[17] By reason of the requirements of ORS 115.195, however, and in the absence of "some competent, satisfactory evidence other than the testimony of the claimant," the judgment of the trial court in this case must be reversed.

---

[16] *See York v. Place,* 273 Or 947, 949, 544 P2d 572 (1975).

[17] *See* Folberg and Buren. *Domestic Partnership, A Proposal for Dividing the Property of Unmarried Families,* 12 Will LJ 453 (1976).